O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICH WARE,<br><br>            Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social<br>Security,<br><br>            Defendant. | Case No. EDCV 11-457-OP<br><br>MEMORANDUM OPINION AND ORDER |

The Court[1] now rules as follows with respect to the two disputed issues listed in the Joint Stipulation ("JS").[2]

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before United States Magistrate Judge Oswald Parada in the instant action. (See ECF Nos. 7, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record ("AR") and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g). (ECF No. 8 at 3.)

1

# I.
# **DISPUTED ISSUES**

As reflected in the Joint Stipulation, the disputed issues raised by Plaintiff as the grounds for reversal and/or remand are as follows:

(1) Whether the Administrative Law Judge ("ALJ") properly considered the lay witness' statements; and

(2) Whether the ALJ properly determined Plaintiff was capable of his past relevant work.

(JS at 2-3.)

# II.
# **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

/ / /
/ / /
/ / /

# III.

# DISCUSSION

**A.      The ALJ's Findings.**

The ALJ found that Plaintiff has severe neurological and musculoskeletal impairments. (AR at 11.) He also found that Plaintiff's medically determinable impairments do not cause more than minimal limitation in his ability to perform basic work activities. (Id.)

The ALJ further found that Plaintiff had the residual functional capacity ("RFC") to perform medium work with occasional climbing of ramps and ladders, balancing, stooping, kneeling, crouching, or crawling. (Id. at 15.) However, he is precluded from climbing ladders, ropes, or scaffolds, and from work around hazards "(unprotected heights, moving machinery, etc.)." (Id.)

At step four the ALJ determined that Plaintiff had not met his burden to prove that he could not perform any past relevant work. (Id. at 16.) He specifically found that based on Plaintiff's RFC, Plaintiff is capable of performing his past relevant work, as actually and generally performed, as a cashier in a pizza restaurant (Dictionary of Occupational Titles ("DOT") 311.472-010), as an oil technician changer (DOT 915.687-018), as a water inspector (DOT 915.587-010), and as a security guard (DOT 372.667-038). (AR at 19.) In the alternative, at step five, relying on the Medical-Vocational Guidelines,[3] the ALJ found that considering Plaintiff's RFC, age, education, and work experience, Plaintiff's only occasional limitation in postural activities would have "no more than a slight effect" on his ability "to perform 1000's of other unskilled entry level SVP2 jobs such as packager, cleaner, or assembler,

---

[3] The Guidelines consist of tables, commonly referred to as "Grids," that provide a "short-hand method for determining the availability and numbers of suitable jobs for a claimant." 20 C.F.R. § 404, subpt. P, app. 2; Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

consistent with his lack of job skills." (Id. at 20.)

## B. Even If the ALJ's Failure to Mention the Lay Witness Statement Was Error, the Error Was Harmless.

Plaintiff claims that the ALJ erred in ignoring the August 1, 2008, Third Party Function Report ("Report") (Id. at 152-60), completed by Plaintiff's girlfriend, Alicia Ramirez. (JS at 3-4.)

### 1. The Report and Plaintiff's Subjective Complaints.

Ramirez stated in that Report that Plaintiff is able to care for his child when he has to, and when "[h]e [h]as [his child] he cooks for her and cleans her up"; Plaintiff tosses and turns all night, and wakes up throughout the night; he is sometimes too weak to dress, and eats frozen foods, whereas he used to make meals; she has to remind him to take care of his personal needs and take medication; he does not do house or yard work because he gets headaches or back pain; he drives, but not long distances; she does most of the shopping; he counts money but slowly now; he spends his time watching TV; he often can not finish what he starts; he sometimes gets upset with neighbors or family because he feels disabled and cannot do the things he used to do; his condition affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see ("sometimes"), remember, complete tasks, concentrate, understand, follow instructions, and get along with others; he walks only one block before needing a twenty minute rest; he takes a long time to read and gets headaches from reading; he does not remember spoken instructions; he gets along well with authority figures; he does not handle stress well and gets mad and irritated; standing, lifting, squatting, bending, and sitting, all tend to make his back hurt or give him a headache; and he does not understand things unless he is told over and over. (AR at 154-59.)

In his own Function Report - Adult, Plaintiff reported that he cleans and cooks for his child; cannot sleep through the night; is sometimes too weak to

4

1  dress; gets light-headed when shaving; does not bathe for more than two to five
2  minutes at a time because he gets dizzy; needs reminders to take his
3  medications; he used to make meals but now eats frozen sandwiches; he does
4  not cook anymore because he gets headaches and backaches if he stands too
5  long; he does not do household chores because he gets headaches; he stays in
6  the house "as much as possible" unless he has a doctor's appointment, or
7  sometimes to church for part of the service; drives; does not do any shopping;
8  no longer has hobbies; needs someone to take him to social events especially
9  when he is sad, emotional, or angry; gets angry with himself because he is not
10 the way he used to be; his condition affects his ability to lift, squat, bend, stand,
11 reach, walk, sit, kneel, talk, hear, climb stairs, see ("sometimes"), remember,
12 complete tasks, concentrate, understand, follow instructions, and get along with
13 others; he can only walk one block before having to rest for twenty minutes; he
14 forgets spoken instructions; he gets along well with authority figures; he does
15 not handle stress or changes in routine well; and he "feels like . . . an old
16 person." (Id. at 142-49.)  At the hearing, Plaintiff complained generally of
17 very bad headaches, very bad back spasms, nosebleeds once or twice a week,
18 dizziness, and inability to sleep. (Id. at 27, 30, 33.)

     **2.     Legal Standard.**
20        Title 20 C.F.R. §§ 404.1513(d) and 416.913(d) provides that, in addition
21 to medical evidence, the Commissioner "may also use evidence from other
22 sources to show the severity of [an individual's] impairment(s) and how it
23 affects [his] ability to work," and the Ninth Circuit has repeatedly held that
24 "[d]escriptions by friends and family members in a position to observe a
25 claimant's symptoms and daily activities have routinely been treated as
26 competent evidence." Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987).
27 This applies equally to the sworn hearing testimony of witnesses (see Nguyen
28 v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)), as well as to unsworn

statements and letters of friends and relatives.  See Schneider v. Comm'r of Soc. Sec. Admin., 223 F.3d 968, 975 (9th Cir. 2000).  If the ALJ chooses to reject such evidence from "other sources," he may not do so without comment.  Nguyen, 100 F.3d at 1467.  The ALJ must provide "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ's failure to address lay witness testimony generally is not harmless.  Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991).  In failing to address a lay witness statement, the error is harmless only if "a reviewing court . . . can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006); see also Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006).

### 3. Analysis.

Here, in discounting Plaintiff's credibility, other than mentioning that he had considered the entire record (AR at 11), and briefly referring to Exhibit 7E,[4] which contains Plaintiff's Function Report as well as Ramirez's Report, the ALJ did not otherwise specifically mention the Report completed by Plaintiff's girlfriend.  He discounted Plaintiff's statements concerning the impact of his impairments on his ability to work based on the information contained in the documentary reports, and the reports of the treating and examining physicians, and activities of daily living that were inconsistent with Plaintiff's claims of complete disability.  (Id. at 18.)  An ALJ may properly consider "testimony from physicians . . . concerning the nature, severity, and

---

[4] "The claimant's statements concerning his impairments and their impact on the claimant's ability to work are not entirely credible in light of discrepancies between the claimant's assertions and information contained in the documentary reports and the reports of the treating and examining practitioners (Exhibits 4E and 7E)." (AR at 18.)

effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities.  See, e.g., Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citation omitted).

Plaintiff does not contend that the ALJ improperly considered the medical opinions of the treating, examining, or consultative physicians.  Here, as noted by the ALJ, the medical records indicate that Plaintiff experienced only mild back problems and was neurologically intact.  The progress notes reflect mostly telephonic check-ins from Plaintiff and normal examinations with continued prescriptions for medications such as Vicodin, Diovan, and Ambien (for pain, high blood pressure, and insomnia, respectively), and no reported side effects.  (See generally, AR at 11-20, 263-70, 278-96).  In June 2006, after suffering a seizure, Plaintiff underwent surgery for a benign brain tumor, after which there was no recurrence, no further seizures, and he was found to be neurologically intact.  (Id. at 16, 172-77.)  He testified at the hearing that doctors had told him his headaches and that the pain in his head from the staples used for surgery are never going to go away.  (Id. at 32.)  MRI imaging in May 2008 reflects an intact lumbar spine and only minimal degeneration.  (Id. at 16, 229.)  A consultative neurological examination in June 2008 by Dr. Moore, found only mild tenderness in the lower back muscles, no muscle spasm, and no sciatic nerve irritation.  (Id. at 16, 17, 193-97.)  Dr. Moore reported a normal neurological examination.  (Id. at 195.)  His opinions also provided support for the ALJ's assessment of Plaintiff's physical capabilities.  (Id. at 196.)  The opinion of state agency reviewing physician, Keith J. Wahl, M.D., is also fully consistent with the ALJ's RFC.  In December 2009, Plaintiff was in a car accident and complained of neck pain.  (Id. at 17.)  However, an examination by a physician's assistant found that Plaintiff exhibited full range of motion in the neck with no tenderness.  (Id. at 17, 279.)

Finally, mental status examinations found Plaintiff oriented to person, place, and time, with mild limitations, at most, in areas of activities of daily living, social functioning, and concentration, persistence or pace. (Id. at 13-15.) Dr. Moore found Plaintiff could follow simple commands and perform simple tasks, and would have only slight difficulty performing complex tasks. (Id. at 12, 196.) Consultative examining psychiatrist, Oluwafemi Adeyemo, M.D., opined that despite Plaintiff's complaints of moodiness, poor sleep, outbursts of anger, headaches, body pains, and irritability, he was able to understand, retain, and execute simple instructions; might have mild difficulty with complex instructions; could respond appropriately to co-workers, supervisors, and the public; could respond appropriately to most work situations; and would be able to deal with changes in a routine work environment. (Id. at 12-13, 254-57.) State agency psychiatrists also found no severe mental impairment. (Id. at 13, 234-44, 262.) In short, substantial evidence supported the ALJ's finding that Plaintiff is not disabled.

Moreover, the ALJ properly discounted Plaintiff's testimony, which Plaintiff does not challenge. An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient.)

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid

of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Dodrill, 12 F.3d at 918; Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

An ALJ's credibility finding must be properly supported by the record and sufficiently specific to ensure a reviewing court that the ALJ did not arbitrarily reject a claimant's subjective testimony. Bunnell, 947 F.2d at 345-47. An ALJ may properly consider "testimony from physicians . . . concerning the nature, severity, and effect of the symptoms of which [claimant] complains," and may properly rely on inconsistencies between claimant's testimony and claimant's conduct and daily activities. See, e.g., Thomas, 278 F.3d at 958-59 (citation omitted). An ALJ also may consider "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors"; "[t]ype, dosage, effectiveness, and adverse side-effects of any medication"; "[t]reatment, other than medication"; "[f]unctional restrictions"; "[t]he claimant's daily activities"; "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment"; and "ordinary techniques of credibility evaluation," in assessing the credibility of the allegedly disabling subjective symptoms. Bunnell, 947 F.2d at 346-47; see also Soc. Sec. Ruling 96-7p; 20 C.F.R. § 404.1529 (2005); Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (ALJ may properly rely on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998) (ALJ may properly rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication).

In this case, the ALJ reasonably discounted Plaintiff's testimony based on its internal inconsistencies, and based on Plaintiff's statements and conduct in other parts of the record. Although Plaintiff alleged he could not stand for more than thirty minutes or sit for more than twenty to thirty minutes, or walk more than one block without needing to rest, he also testified that he cared for and played with his two children, aged two years and nine months old, respectively (AR at 18, 26, 356, 129, 194, 255), could lift his thirty-two pound child (id. at 18, 130), could drive up to forty-five minutes at a time (in 2009) and up to one and one-half hours (in 2008) (id. at 18, 38-39, 130, 194). He had recently renewed his driver's license without restriction, and was able to transport his girlfriend and children to or from work, school, or the park; go to doctor's appointments; go to church; prepare simple foods; and spend time with his family. (Id. at 18, 36-37, 129-31, 142-51.)

Moreover, most of the doctors opined that Plaintiff could do some sort of medium work physically, and at least simple work, mentally and neurologically. (Id. at 12-14, 17, 196, 256-57); Thomas, 278 F.3d at 958-59 (ALJ may consider inconsistencies between claimant's statements and testimony from physicians concerning the nature, severity, and effect of the symptoms complained of). As previously discussed, the results of Plaintiff's various examinations showed only mild abnormalities and did not support his subjective complaints. Morgan, 169 F.3d at 599-600 (ALJ properly considered conflict between claimant's subjective complaints and the medical evidence where he found that medical evidence did not support claimant's complaints). Accordingly, the ALJ properly discounted Plaintiff's credibility.

A review of Plaintiff's Function Report and the Report completed by his girlfriend, shows that the opinions of Plaintiff's girlfriend was extremely similar to Plaintiff's Function Report. For instance, Plaintiff described his sleep patterns as "I can't sleep through the night I toss and turn." (AR at 143.)

10

1  Ramirez stated: "He tos[s]es and turns all night wakes up through the night."
2  (Id. at 153.)   Plaintiff states he does not go outside and that he "tr[ies] to stay
3  in as much as possible unless I go to Doctor Apt." (id. at 145); Ramirez stated
4  that Plaintiff goes outside "not often[.] [O]nly when he has apt." (id. at 155).
5  These and many other similarities permeate the two reports and, but for some
6  minor differences, Ramirez's Report virtually mirrors Plaintiff's Function
7  Report.  Where, as here, the lay witness testimony mirrors the claimant's
8  testimony and the claimant is found to be not credible, the ALJ may reject the
9  lay witness testimony for that reason alone.  See Valentine v. Comm'r of Soc.
10 Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (holding that ALJ gave
11 germane reason for rejecting claimant's wife's testimony where it was similar
12 to claimant's own complaints that were properly rejected).  Thus, the Court
13 finds that the valid reasons given by the ALJ to reject Plaintiff's credibility,
14 also legitimately support his implicit rejection of Plaintiff's girlfriend's
15 credibility.

16      Even if the ALJ's failure to address the opinions of Plaintiff's girlfriend
17 was error, the error is harmless because no reasonable ALJ would have reached
18 a different disability determination having considered it.  Stout, 454 F.3d at
19 1056; Robbins, 466 F.3d at 885.  This is because, as noted, the opinions of
20 Plaintiff's girlfriend virtually mirrored his subjective complaints.  See
21 Cleveland v. Astrue, No. CV 09-4852-SS, 2010 WL 1678294, at *8 (C.D. Cal.
22 Apr. 23, 2010) (ALJ's failure to expressly provide reason for rejecting lay
23 witness statements was harmless error where statements mirrored claimant's
24 testimony that was properly found not credible).  Accordingly, because
25 substantial evidence supported the ALJ's RFC finding, and valid reasons
26 supported the ALJ's credibility determination, the Court finds that even if this
27 Report was fully considered, no reasonable ALJ could have reached a different
28 disability determination.  Thus, any error was harmless.  See also id.

**C.  The ALJ Properly Determined Plaintiff Was Capable of His Past Relevant Work.**

**1.  Plaintiff's Contentions.**

Plaintiff contends that the ALJ erroneously determined Plaintiff was capable of performing his past relevant work as a pizza worker, an oil changer, water inspector, and security guard. (JS at 14.) Specifically, Plaintiff claims that his prior work as a fast food pizza worker included driving, an activity precluded by the ALJ's determination that Plaintiff should not do work involving hazardous moving machinery. (Id.) He also claims that the jobs of oil changer, inspector, and security guard as described in the DOT, all involve working around hazards and moving machinery (id. at 15): an oil changer involves working with "moving parts of automotive vehicles";[5] the job of inspector[6] includes using a forklift to transport materials such as filled an empty oil drums; and the security guard job involves patrolling assigned territory to protect persons or property and apprehending unauthorized persons (id. (citations omitted)). He complains that the ALJ failed to articulate a reasonable explanation for deviating from the DOT job descriptions as related to Plaintiff's limitations. (Id. at 15.)

---

[5] While the DOT describes this job as involving *lubricating* the moving parts of automotive vehicles such as springs, universal joints, steering and knuckles, it also specifically notes that moving mechanical parts are not a condition of the job. DOT No. 915.687-018.

[6] An inspector refuels and oils motor vehicles in company garage, including refilling the radiator, and washing the windows of the vehicle; it may also involve compiling mileage records, fuel consumption logs, and storage tank inventory. DOT No. 915.587-010. Moving mechanical parts are not a condition of the job. Id.

**2. Applicable Law.**

At step four of the sequential evaluation process, a claimant must establish that his severe impairment or impairments prevent him from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). The regulations explain the step-four evaluation:

> If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant has the burden of showing that he can no longer perform his past relevant work. Id. §§ 404.1520(e), 416.920(e); see also Clem v. Sullivan, 894 F.2d 328, 331-32 (9th Cir. 1990). Although the burden of proof lies with the claimant, the ALJ still has a duty to make requisite factual findings to support his conclusion as to whether a plaintiff can perform his past relevant work. See Pinto, 249 F.3d at 844 (despite the fact that the claimant has the burden at step four, "the ALJ is [not] in any way relieved of his burden to make the appropriate findings to insure that the claimant really can perform his or her past relevant work"); see also Henrie v. U.S. Dept. of Health & Human Serv., 13 F.3d 359 (10th Cir. 1993) (recognizing the tension created between the mandate of Social Security Ruling[7] ("SSR") 82-62 and the claimant's burden of proof, and finding that the ALJ's duty is one of inquiry and factual development while the claimant

---

[7] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. Bunnell, 947 F.2d at 346 n.3. Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

continues to bear the ultimate burden of proving disability).

In order to determine whether a claimant has the RFC to perform his past relevant work, the ALJ must evaluate the work demands of the past relevant work and compare them to the claimant's present capacity. Villa v. Heckler, 797 F.2d 794, 797-98 (9th Cir. 1986). SSR 82-62 states that a determination that a claimant has the capacity to perform a past relevant job must contain among the findings the following specific findings of fact: (1) a finding of fact as to the claimant's RFC; (2) a finding of fact as to the physical and mental demands of the past job or occupation; and (3) a finding of fact that the claimant's RFC permits him to return to the past job or occupation. See SSR 82-62; see also Pinto, 249 F.3d at 844-45.

A finding that a claimant is able to return to his past relevant work must be based on adequate documentation and a careful appraisal. Dealmeida v. Bowen, 699 F. Supp. 806, 807 (N.D. Cal. 1988) ("Without the proper foundation as to what plaintiff's past relevant work entailed, the ALJ's subsequent determination that plaintiff retained the residual functional capacity to perform that job is not supported by substantial evidence."). This determination requires a careful appraisal of the claimant's statements, the medical evidence, and, in some cases, corroborative information such as the DOT. SSR 82-62. Adequate documentation must be obtained to support the decision, including "factual information about those work demands which have a bearing on the medically established limitations." Id. As a result, "[d]etailed information about . . . mental demands and other job requirements must be obtained as appropriate." Id.; see also Sivilay v. Apfel, 143 F.3d 1298, 1299 (9th Cir. 1998) (remanding to ALJ to "investigate fully the demands of the applicant's past work and compare them to the applicant's residual mental and physical capabilities"). Any determination regarding a claimant's ability to perform past work "must be developed and explained fully in the disability

decision" and "every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit." SSR 82-62.

### 3. Analysis.

As previously noted, the ALJ found that Plaintiff could perform his past relevant work both as actually performed, and as generally performed. If Plaintiff can do any one of the four jobs mentioned by the ALJ, as either actually or generally performed, the decision stands. See, e.g., Batson v. Comm'r, 359 F.3d 1190, 1197 (9th Cir. 2004) (although one of the ALJ's reasons for discounting claimant's credibility was invalid, the decision will be upheld in light of the other reasons supporting the ALJ's analysis).

In this case, Plaintiff contends that the job of food worker as he actually performed it involved driving a car, which he deems to constitute working around "hazardous moving machinery." Even if the Court were to find that driving a car involves "hazardous moving machinery," which it does not so find, the DOT description of this job as *generally* performed does not include driving a car or any other indication that it involves working with hazardous moving machinery. In fact, the DOT description specifically notes that moving mechanical parts are not a condition of the job. Thus, there was no error.[8]

Even assuming there was error at step four, the ALJ made an alternative

---

[8] Similarly, the DOT description for "inspector" does not require climbing, balancing, stooping, kneeling, crouching, or crawling. DOT No. 915.587-010. It involves refilling vehicle radiators, washing windows, compiling mileage logs, and transporting oil drums with a forklift. Id. The DOT specifically indicates that the job does not involve mechanical moving parts. Id. However, even if transporting oil drums with a forklift is a hazard Plaintiff should avoid, the job as he *actually* performed it did not involve this task. (AR at 126.) Thus, Plaintiff could perform this job as actually performed, and there was no error in the ALJ's step-four finding that Plaintiff was "not disabled" as related to this job.

finding at step five, based on the Grids, that Plaintiff's nonexertional limitations would have little or no effect on the occupational base for unskilled medium work, and that Plaintiff would be able to perform "1000's of other unskilled, entry level SVP2 jobs [with a learning time of just up to one month] such as packager, cleaner, or assembler, consistent with his lack of job skills." (AR at 19-20.) As previously discussed, substantial evidence supported the ALJ's RFC finding, and Plaintiff does not challenge this step-five finding. Thus, there was no error.

Based on the foregoing, substantial evidence supports the ALJ's conclusion that Plaintiff was not disabled, and the ALJ's decision should be upheld.

## IV.

## ORDER

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED: October 26, 2011

HONORABLE OSWALD PARADA
United States Magistrate Judge